IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MIRIAM CLARE SHULTZ,      )
                              )
      Plaintiff,          )
                              )
    v.                 )     CIVIL ACTION NO. 2:09cv646-WKW
                              )
R. BRIAN WELLS, *et al.*,      )
                              )
      Defendants.     )

## REPORT AND RECOMMENDATIONS

Before the Court is Defendants' Motion to Dismiss or Alternatively for Summary Judgment (Doc. #10). Plaintiff filed her Complaint (Doc. #1) on July 10, 2009, and Defendants filed the instant Motion on August 7, 2009. The Court ordered Plaintiff to respond to the Motion on or before August 31, 2009. Briefing Order (Doc. #11). Plaintiff did not file a timely response pursuant to the Court's Briefing Order. At some point in late 2009, Plaintiff's counsel, Robert H. Ford, advised the Court that he was surrendering his license to practice law and would not be continuing in his representation of Plaintiff. The Court entered an Order (Doc. #24) directing Plaintiff to notify the Court, on or before January 8, 2010, of her intent to proceed *pro se* or have successor counsel notice his or her appearance on Plaintiff's behalf. On January 8, 2010, Plaintiff submitted a letter to the Court in which she noticed her intent to proceed *pro se* and requested an additional four months to respond to Defendant's Motion. Response to Order (Doc. #26).

On January 12, 2010, the District Judge entered an Order (Doc. #28) denying

Plaintiff's request for an extension and referring this matter to the undersigned Magistrate Judge "for all pretrial proceedings and entry of any orders or recommendations as may be appropriate." On January 14, 2010, the undersigned entered an Order (Doc. #29) directing Plaintiff to file her response to the Motion to Dismiss on or before January 22, 2010. Plaintiff filed a Response (Doc. #30) to the Order, not Defendant's Motion, in which she lamented her former attorney's abandonment of her case and her struggle to find successor counsel. Plaintiff again requested an additional four-month delay to find counsel. On January 28, 2010, the Court conducted a telephonic hearing with the parties, during which the Court advised Plaintiff about her obligations when bringing suit in federal court and the relative burdens and obligations imposed on all concerned parties when suit is initiated. At the hearing, the Court advised Plaintiff that she would be afforded until February 16, 2010, to file a response to Defendants' Motion. The Court subsequently entered an Order (Doc. #33) confirming this deadline. On February 16, 2010, Plaintiff mailed her Response (Doc. #36) to the Court and it was entered on the docket on February 18, 2010. Accordingly, Defendants' Motion to Dismiss and Plaintiff's Response are now ready for disposition.

## I.   BACKGROUND

Plaintiff is a chiropractor formerly licensed and practicing in Alabama. Defendants are the members of the Alabama State Board of Chiropractic Examiners and the attorney who represented the Board in administrative proceedings which involved Plaintiff. In May of 2008, the Board initiated disciplinary proceedings against Plaintiff, charging seven counts

of misconduct based, apparently, on Plaintiff's treatment of one of her patients and an alleged altercation between Plaintiff and an emergency medical technician ("EMT") responding to a call for emergency medical assistance at a location at which Plaintiff was present. A disciplinary hearing was held on November 21, 2008, at which testimony was heard and exhibits were received into evidence. Plaintiff was not represented by counsel at the disciplinary hearing.

After the hearing, the Board issued a Final Order, on December 2, 2008, in which the Board adjudicated Plaintiff guilty of the seven counts of misconduct and imposed penalties, including the suspension of Plaintiff's license to practice. Pursuant to applicable state law, Plaintiff pursued an appeal of the Board's decision to the Montgomery County Circuit Court. On July 13, 2009, the Circuit Court conducted a hearing on Plaintiff's appeal, at which Plaintiff was represented by counsel.[1] Afterward, the Circuit Court entered an order affirming the decision of the Board. It is unclear whether Plaintiff has availed herself of further available appellate remedies in the state courts of Alabama.

## II.   PLAINTIFF'S COMPLAINT AND DEFENDANT'S MOTION

Plaintiff's Complaint in this Court consists of three counts in which it is alleged that, through their disciplinary actions, Defendants violated various of Plaintiff's constitutional rights. Count One alleges a violation of Plaintiff's "Right to Counsel as guaranteed by the Sixth Amendment to the United States Constitution . . . ." Complaint (Doc. #1) at ¶ 14.

---

[1] As noted above, Plaintiff filed the instant action on July 10, 2009, apparently during the pendency of her appeal before the Montgomery County Circuit Court.

Count Two alleges a "violation of the Plaintiff's right to due process under Amendments Five and Fourteen under the United States Constitution." *Id.* at ¶ 26. Count Three alleges a violation of "Plaintiff's freedom of speech under the First Amendment of the United States Constitution . . . ." *Id.* at ¶ 35.

Defendants' Motion to Dismiss or Alternatively for Summary Judgment seeks dismissal or summary judgment on the following grounds: 1) that the Complaint fails to state a claim upon which relief can be granted; 2) that the Defendants are immune from suit; 3) that Plaintiff has failed to "allege any facts which support any violation of any rights secured to her" by the Constitution or federal law; 4) that this matter is barred by *res judicata* or collateral estoppel; 5) that this matter should be dismissed because Plaintiff's allegations concern "procedural due process claims and the state has available an adequate post-deprivation remedy which [Plaintiff] has initiated"; 6) that the Court should abstain from exercising jurisdiction pursuant to various abstention doctrines; 7) to avoid pending parallel state and federal actions; 8) that "[t]here are no genuine issues as to any material facts and the defendants are entitled to judgment as a matter of law;" and 9) that Defendant Ward is due to be dismissed as a defendant because he "is an attorney in private practice, not employed by the state, [and] therefore not a state actor or acting under color of state law." Def.'s Mot. To Dismiss (Doc. #10) at ¶ 17(a)-(k).

Plaintiff's Response (Doc. #36) to Defendant's Motion consists mostly of a recitation of the perceived iniquities of her disciplinary proceedings and insufficiency of state court process available to her on appeal from the Board's actions. Plaintiff also describes her

practice of sending unsolicited documents to witnesses and Board members prior to the hearing which purport to require affirmative responses from the recipients and create debt and/or liens against the recipient should they fail to respond. Plaintiff attached numerous of these documents as exhibits to her Response. Finally, the Response includes a count-by-count denial of each of the grounds for dismissal asserted by Defendants and summarized above.

## III.  STANDARD OF REVIEW

Defendants contend that Plaintiff's "Complaint and each and every Count thereof fail to state a claim . . . upon which relief may be granted." Def.'s Mot. (Doc. #10) at ¶ 17(a). Thus, Defendants have moved the Court to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "Under [Rule 12(b)(6)], whether a plaintiff failed to state a claim upon which relief can be granted must be ascertained from the face of the complaint." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1266 n.11 (11th Cir. 1997). Generally, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Johannessen*, 76 F.3d 347, 349 (11th Cir. 1996). In considering a motion pursuant to Rule 12(b)(6), the Court must "accept the facts of the complaint as true and view them in the light most favorable to the nonmoving party." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004).

Alternatively, Defendants move the Court to grant them summary judgment as to each

of the claims raised in the Complaint. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a

genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## IV.   DISCUSSION

Applying the standards set forth above, the Court will now consider each of Plaintiff's claims for relief in the Complaint.

### A.   Plaintiff's claim that she was denied her right to counsel.

Plaintiff claims that she was denied some purported right to counsel during the disciplinary proceedings initiated against her by the Board. Specifically, she claims that the notice of hearing she received diminished "the importance of being represented by counsel" at the hearing, and that such language was included "willfully, intentionally and knowingly as an attempt to deemphasize [sic] the importance that the Plaintiff be represented by counsel, thereby violating her Right to Counsel as guaranteed by the Sixth Amendment to the United States Constitution . . . ." Complaint (Doc. #1) at ¶¶ 12-14.

Plaintiff's right-to-counsel claim fails to state a claim upon which relief can be granted because, under the Sixth Amendment, she was not entitled to an attorney during the administrative disciplinary proceedings initiated by the Board. The Sixth Amendment clearly limits the reach of the rights it confers to "criminal prosecutions." U.S. Const. amend. VI. *See Austin v. United States*, 509 U.S. 602, 608 (1993) ("The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'"). Here, "the underlying proceeding was administrative, rather than criminal, in nature, [as Plaintiff] was not charged with a felony, and no term of imprisonment was [or even could have been] imposed." *Branch v. Franklin*, 285 F. App'x 573, 576 (11th Cir. 2008). Because the Sixth Amendment is inapplicable to the administrative disciplinary proceedings involving Plaintiff, she was not endowed with a constitutional right to the assistance of counsel. Hence, Plaintiff's allegations about the denial of such a right fail to state a claim upon which relief may be granted.

**B.    Plaintiff's claim that she was denied due process.**

Plaintiff contends that her right to due process was violated because "the Defendant's [sic] Notice fails to inform the Plaintiff that she might be deprived of the right to her real property or otherwise might be restricted in its use." Complaint (Doc. #1) at ¶ 22. Plaintiff claims that the statute authorizing the imposition of disciplinary penalties by the Board "does *not* give the Defendants legislative authority to place any restrictions or prohibitions on the Plaintiff's use of her real property outside of restricting or limiting her right to practice

chiropractic medicine upon the premises." *Id.* at ¶ 23 (emphasis in original). Plaintiff further contends that Ala. Code § 34-24-166(c)(2)(d) "is vague, ambiguous and overreaching," and that the Notice of Hearing she received from the Board failed to inform her that: 1) the disciplinary "hearing would be the only opportunity for her to offer all evidence and witnesses on her behalf;" 2) the "hearing would be the only opportunity for her to cross-examine witnesses;" and 3) the "transcript of the proceedings would be the only Record on which any appellate tribunal would base its decision." *Id.* at ¶¶ 24-25.

Plaintiff fails to state explicitly whether each allegation she raises relates to a purported violation of Plaintiff's substantive or procedural due process rights, or both. "The Fourteenth Amendment's Due Process Clause protects an individual's substantive and procedural rights. A violation of substantive due process rights occurs where an individual's fundamental rights, those 'implicit in the concept of ordered liberty,' are infringed. Procedural due process rules, on the other hand, protect an individual from the unjustified deprivation of life, liberty, or property." *Walker v. Sun Trust Bank of Thomasville, Georgia*, 2010 WL 165131 at *6 (11th Cir. Jan. 19, 2010) (internal citations omitted). The substantive due process clause is rarely implicated by governmental action. "Officials acting under the color of state law violate the substantive component of the Due Process Clause only when their conduct 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Peterson v. Baker*, 504 F.3d 1331, 1336 (11th Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)).

The test for procedural due process claims under 42 U.S.C. § 1983 requires that the plaintiff show: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). The question of what process is constitutionally adequate is resolved by application of the test articulated by the Supreme Court of the United States in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Grayden*, 345 F.3d at 1232-33. The *Mathews* test

> requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Given Plaintiff's claim that the Board was without "legislative authority to place any restrictions or prohibitions on the Plaintiff's use of her real property outside of restricting or limiting her right to practice chiropractic medicine upon the premises," it appears that Plaintiff is attempting to raise a substantive due process claim concerning the Board's alleged arbitrary actions. However, to the extent such a claim was intended, it is without merit. It should first be noted, again, that Plaintiff appears to concede that the Board was empowered to limit her use of her real property to the extent necessary to "restrict[] or limit[] her right to practice chiropractic medicine upon the premises." Complaint (Doc. #1) at ¶ 23. This

concession is necessary, as the Board's oversight authority as a licensing agency would be eviscerated if Plaintiff were able to continue operations out of her chiropractic office despite the suspension of her license. However, Plaintiff's claim that, pursuant to the Board's Order, she is "prohibited from using in any way the premises that once housed her chiropractic office," *id.* at ¶ 19.(d), is misleading and inaccurate. The provision of the Order which is the subject of this aspect of Plaintiff's due process claim reads as follows:

> Dr. Shultz should not benefit in any way from her chiropractic practice or from the use of her chiropractic office or premises or from any contract, agreement, or arrangement of any kind whatsoever concerning or involving her chiropractic practice or from the use of her chiropractic office or premises nor shall she received [sic] any fees, rentals, income, payments of any kind or type of remuneration whatsoever from her chiropractic practice or from the use of her chiropractic office or premises or from any contract, arrangement or agreement concerning or involving her chiropractic practice or the use of her chiropractic office or premises. Further, Dr. Shultz shall not receive any monies, income, fees, payments, rentals or any other kind or type of remuneration which was generated or earned during her period of suspension.

Final Order at ¶ 5, ex. B to Complaint (Doc. #1). While the provision is perhaps less than a model of clarity, no reasonable construction permits the conclusion that it serves as the total seizure of property asserted by Plaintiff. It is clear that the Board merely sought to announce terms necessary to effectuate its Order that Plaintiff be suspended from practicing chiropractic for six months. The Order does not state that she is precluded from making "any and all" non-chiropractic uses of the facilities which once housed her chiropractic practice. The Order speaks repeatedly, and exclusively, of Plaintiff's "chiropractic office or premises." The Board could not permit Plaintiff to continue conducting activities out of her chiropractic

office - even if her activities were not strictly the practice of chiropractic as that term is defined in Ala. Code § 34-24-120(a) - as long as she was able to hold herself out as a chiropractor or the condition of the office otherwise conveyed that she is a practitioner in good standing.[2] To the extent Plaintiff might have removed all the trappings of a chiropractic office, including the legally required identification of her profession from a prominent position in the office, and simply made some unrelated use of the premises - thereby rendering the facility not a "chiropractic office or premises" - the Order can not reasonably be said to prohibit such action.

Hence, Defendants contend that the subject provision does not infringe on Plaintiff's due process rights and that Defendants are entitled to summary judgment. In contesting a motion for summary judgment as to this issue, Plaintiff bears the burden of producing evidence, beyond her mere pleadings, that the provision at issue somehow violates her due process rights. Plaintiff has produced no such evidence. Instead, Plaintiff again cites to the provision and, consistent with her Complaint, makes the conclusory assertion that the provision amounts to a seizure of her real property. *See* Pl.'s Resp. (Doc. #36) at 6. Given the language of the provision, the limited authority granted the Board, Plaintiff's concession that the Board may limit her use of her office to the extent necessary to enforce its licensure suspension, and Plaintiff's failure to produce any evidence corroborating her position, the

---

[2]     It is noteworthy that Alabama law requires that a chiropractor "conspicuous[ly]" display his or her profession "at the entrance of his or her office or place in which he or she practices." Ala. Code § 34-24-161(f).

Court finds that any "doubt" that exists about the scope of the provision, and hence its effect on Plaintiff's substantive due process rights, is "metaphysical,"[3] at most, or, more probably, a tortured effort to divine a federal constitutional claim for the simple expedient of litigating this matter anew in federal court. Accordingly, the Board's decision to restrict the use of Plaintiff's "chiropractic office or premises" as a means of enforcing its suspension of her license to practice is not arbitrary or conscience-shocking within the meaning of the Fourteenth Amendment. The Board's restriction of Plaintiff's ability to use her chiropractic office or premises did not deprive Plaintiff of any substantive due process rights.

To the extent Plaintiff's claim about the restriction on her ability to use her "chiropractic office or premises" can be construed as a procedural due process claim, it is, nevertheless, without merit. Even assuming that Plaintiff has been deprived of a protected property interest - presumably, the right to continue utilizing her chiropractic office in some capacity inconsistent with the Board's Order - she has failed to demonstrate that the process precipitating that denial was inadequate. Consideration of the relevant *Mathews* factors makes this clear. Foremost among the factors relevant to the Court's analysis is the minimal "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The statutes which govern the disciplinary proceedings before the Board, and the subsequent appeals throughout the state court system, erect a comprehensive scheme in

---

[3]        *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

which chiropractors targeted for disciplinary proceedings are entitled to present evidence, cross-examine all witnesses, and raise concerns about alleged violations of state and federal rights. *See* Ala. Code. §§ 34-24-166 through 175. Plaintiff has made no showing that the process provided by the State is insufficient, or that any alleged erroneous deprivation of a property interest by the Board can not be remedied on appeal to the State courts. Indeed, Plaintiff filed suit in this Court during the pendency of her appeal before the state Circuit Court. Plaintiff has suffered no procedural due process violation "unless and until the state refuses to provide due process." *McKinney v. Pate*, 20 F.3d 1550, 1562 (11th Cir. 1994) (quotation omitted). Plaintiff cannot complain of a procedural due process violation until Alabama has "refuse[d] to make available a means to remedy the deprivation." *Id. See also Cotton v. Jackson*, 216 F.3d 1328, 1330-31 (11th Cir. 2000) ("This rule . . . recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora-agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation."). Given that, at the time she filed suit in this Court, Plaintiff was still prosecuting her appeal in the various channels provided by the state, any claim that she suffered a procedural due process violation based on the deprivation of her purported property interest is without merit.

Plaintiff's conclusory claim that Ala. Code § 34-24-166(c)(2)(d) is unconstitutionally "vague, ambiguous, and overreaching," Complaint (Doc. #1) at ¶ 24, also fails. "The void-for-vagueness doctrine typically applies where a statute *prohibits* conduct without clearly

defining that conduct." *American Iron and Steel Inst. v. Occupational Safety and Health Admin.*, 182 F.3d 1261, 1277 (11th Cir. 1999) (emphasis in original). Here, § 34-24-166(c)(2)(d) simply provides that, when the Board adjudicates a licensee guilty of one of the provisions outlined in § 34-24-166(b), the Board may "[i]ssue an order fixing a period and terms of probation best adapted to protect the public health and safety and to rehabilitate the licensee." This statutory provision does not "prohibit" any conduct on the part of Plaintiff, or any other citizen, and Plaintiff fails to provide any further evidence or argument about how the statute is otherwise impermissibly "vague, ambiguous, and overreaching." Accordingly, Defendant is entitled to summary judgment as to this claim.

Finally, under the auspices of her due process claim, Plaintiff raises a number of purported deficiencies of the Notice provided to her in advance of the disciplinary hearing, including that it failed to inform her that the hearing would be the "only opportunity for her to offer all evidence and witnesses on her behalf," that the "hearing would be the only opportunity for her to cross-examine witnesses," and that a "transcript of the proceedings would be the only Record on which any appellate tribunal would base its decision." Complaint (Doc. #1) at ¶ 25. It appears, therefore, that Plaintiff is attempting to raise a procedural due process claim related to the purported inadequacy of the Notice provided her, rather than the disciplinary proceedings as a whole.

The Notice sent to Plaintiff first advised Plaintiff that, pursuant to the authority contained in Ala. Code §§ 34-24-167 & 41-22-12(a) and (b), a hearing regarding the

allegations contained therein was scheduled for a certain time and location. Elsewhere, the Notice sent to Plaintiff reads as follows:

> AT THE AFORESAID TIME AND PLACE AND FROM TIME TO TIME THEREAFTER AS MAY BE DIRECTED BY THE BOARD YOU MAY BE REPRESENTED BY AN ATTORNEY (IF YOU SO DESIRE), CROSS- EXAMINE ALL WITNESSES WHO TESTIFY AGAINST YOU AND PRESENT SUCH EVIDENCE IN YOUR OWN BEHALF IN RESPONSE TO THESE CHARGES AS YOU CONSIDER NECESSARY AND APPROPRIATE.
>
> NOTICE IF [sic] FURTHER GIVEN THAT THE HEARING IN THIS CAUSE WILL BE CONDUCTED PURSUANT TO THE PROVISIONS OF CODE OF ALABAMA (1975) § 41-22-12 AND § 41-22-13 AND BOARD RULE 190-X-4.05.

Notice, ex. A to Complaint (Doc. #1). The Notice contains all of the elements required by Ala. Code § 34-24-167(b) and expressly cites to the Alabama statutes, Ala. Code §§ 41-22-12 and 13, which govern the admission of evidence in proceedings like that involving Plaintiff. The limitations on fact-finding during appellate review of the Board's disciplinary proceedings with which Plaintiff is aggrieved are clearly set forth in Ala. Code §§ 41-22-20 and 41-22-21, and these provisions are expressly alluded to in Ala. Code § 34-24-175, which describes how a chiropractor whose license is revoked or suspended may undertake appeal of the Board's decision. Plaintiff enjoyed at least constructive notice of these provisions given their inclusion in the code governing the licensure of her profession and the conduct of her disciplinary proceedings.

Plaintiff cites to no law requiring that the Notice provided her by the Board must also apprize her of the limits on fact-finding and record development which inhere during appeals

from the Board to the Alabama state courts. This Circuit has previously held that, with respect to a pending administrative hearing affecting important rights, "notice must be 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Grayden*, 345 F.3d at 1242 (citations omitted). In other words, "[w]here the notice given to the responding party is not misleading and apprises the party of the issues in controversy, the requirements of the law are met." *Intercontinental Industries, Inc., v. American Stock Exchange*, 452 F.2d 935, 941 (5th Cir. 1971).[4] Here, the Notice clearly identifies the authority under which the proceedings are to be conducted, lists and describes each disciplinary count at issue, and informs Plaintiff of her right to have counsel appear on her behalf, examine witnesses, and present evidence. Moreover, the fact that the limitations on appeal, which were not outlined in the Notice, are clearly set forth in Alabama's statutory code defeats any contention that the Notice is inadequate for failing to alert Plaintiff to such matters. *See Reams v. Irvin*, 561 F.3d 1258, 1265 (11th Cir. 2009) ("where remedial procedures are established by published, generally available state statutes and case law, law enforcement officials need not take additional steps to inform a property owner of her remedies.") (quotations omitted). Accordingly, the Notice provided Plaintiff was constitutionally adequate and Defendants are entitled to summary judgment on Plaintiff's

---

[4]    Decisions of the United States Court of Appeals for the Fifth Circuit rendered prior to September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

claim that she was denied due process because of the purportedly deficient Notice.

## C. Plaintiff's claim that she was denied freedom of speech.

Plaintiff claims that, because two of the counts of misconduct for which she was found guilty pertain, purportedly, only to "words allegedly uttered by the Plaintiff," which were not "incitement" and occurred in "the context of a doctor-patient relationship," "Defendants violated the Plaintiff's freedom of speech under the First Amendment . . . in that the Defendants functionally suppressed the Plaintiff's right to speak freely and openly." Complaint (Doc. #1) at ¶¶ 31-33, 35. Plaintiff further claims that "The First Amendment protects physician speech in the context of the doctor-patient relationship." *Id.* at ¶ 37.

Count I of the disciplinary Notice lodged against Plaintiff charged her with "[u]nlawful invasion of the field of practice of any other health practitioner," without possessing licensure in that field, stemming from the allegation that Plaintiff advised one of her patients to cease taking certain medications prescribed by her physicians. Notice at 1, ex. A to Complaint (Doc. #1) It was further alleged that Plaintiff sold this patient "various herbs, powders, etc. to take in place of her prescribed medications." *Id.* Count II alleged that Plaintiff engaged in unprofessional conduct by making a number of provocative, controversial, and potentially dangerous statements to this same patient during the course of their relationship. *Id.* at 2.[5] After the hearing before the Board, Plaintiff was adjudicated

---

[5]     The statements include: 1) "Medications prescribed to you by your physicians are bad and you should quit taking them;" 2) "Your OBG-GYN is no good;" 3) "You are not wanting to get better or you would grow up and just get over your condition;" 4) "You must enjoy your problems or would not have them;" 5) "You do not need anything else (referring to

guilty of the two charges.

The Court first notes that Plaintiff's claim appears to confuse the concept of evidentiary privileges and constitutionally protected speech. While certain evidentiary privileges apply, in limited circumstances, to limit the admissibility into evidence of statements made during the course of some doctor-patient relationships,[6] that concept is entirely irrelevant to Plaintiff's claim. Rather, Plaintiff's claim presents only the narrow issue of whether or not the Board's decision to impose discipline for Plaintiff's alleged statements violates her First Amendment rights. Given that Plaintiff appears to be claiming that her license was suspended, in part, because of "words allegedly uttered by the Plaintiff," Complaint (Doc. #1) at ¶ 31, it appears that Plaintiff is alleging a First Amendment retaliation claim. "To state a retaliation claim [for purposes of § 1983], . . . a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech."

---

her medications) except what I say to take;" 6) "Physicians are only trying to make money off you and are not taking care of you;" 7) "Your medications are killing you;" 8) "Stop filling doctors [sic] pockets who are not doing anything but killing you;" and 9) "You have one month to get off your medications or else." Notice at 2, ex. A to Complaint (Doc. #1).

[6] It bears noting that, under Alabama law, there is no recognized chiropractor-patient privilege. The Alabama Rules of Evidence recognize, *inter alia*, the following privileges: attorney-client (Rule 502), psychotherapist-patient (Rule 503), counselor-client (Rule 503A), husband-wife (Rule 504), and communications to clergy (Rule 505). A "psychotherapist" within the meaning of Rule 503 must be "licensed to practice medicine" and "regularly engaged in the diagnosis or treatment of mental or emotional conditions," or "licensed as a psychologist." Given this criteria, it does not appear Rule 503 would apply in the context of a chiropractor-patient relationship.

*Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

The Court must first determine whether Plaintiff's speech at issue was "protected" within meaning of the First Amendment. While some courts have held that "physician speech is entitled to First Amendment protection," *Conant v. Walters*, 309 F.3d 629, 636 (9th Cir. 2002), such protection is not absolute, as physician speech, even in the course of the treatment relationship, remains subject to "reasonable licensing and regulation by the State." *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 884 (1992); *see also Nat. Ass'n for Advancement of Psychoanalysis v. California Bd. Of Psychology*, 228 F.3d 1043, 1053-55 (9th Cir. 2000) ("The communication that occurs during psychoanalysis is entitled to constitutional protection, but it is not immune from regulation."). The notion that the State may reasonably license and regulate speech in the context of the doctor-patient relationship applies with even greater force considering the circumstances in this case. To the extent Ala. Code §§ 34-24-166(b)(3) & (7) have been applied to "functionally suppress" Plaintiff's speech, such application was necessary given the character of Plaintiff's speech. Plaintiff was adjudicated guilty of making numerous statements about the efficacy of her patient's prescribed medications and impugning the motives of the physician(s) who prescribed such medications. Ultimately, the Board found, Plaintiff directed her patient to cease taking her prescribed medications in favor of "various herbs, powders, etc." sold to the patient by Plaintiff. As the Board found, Plaintiff's speech constituted an "unlawful invasion of the field of practice" of another health practitioner, in this case the actual treating

physician(s) of Plaintiff's former patient, where Plaintiff is not licensed to practice medicine.

Clearly the state may reasonably regulate speech in the doctor-patient relationship which

unprofessionally, and perhaps illegally, falls outside the scope of the practitioner's licensed

field of practice, and more egregiously, may be motivated by a commercial, pecuniary

motive.[7]  To hold otherwise would completely eviscerate the important role professional

malpractice plays in regulating various licensed professions to ensure quality professional

services and the health and safety of the public.

Alabama law defines the practice of chiropractic as "the science and art of locating

and removing without the use of drugs or surgery any interference with the transmission of

nerve energy in the human body by any means or methods as taught in schools or colleges

of chiropractic . . . ." Ala. Code § 34-24-120(a).  Chiropractors are expressly forbidden from

"prescrib[ing] or administer[ing] medicine to patients."  Ala. Code § 34-24-122.  It follows,

therefore, that chiropractors are not permitted, by virtue of their license, to interfere with the

administration or prescription of medicine by licensed medical practitioners or otherwise

interfere with the relationship between the patient and such medical practitioner.  To the

extent a chiropractor's speech impermissibly invades the province of a licensed medical

---

[7]        *See, e.g., Shea v. Bd. of Medical Examiners*, 81 Cal. App.3d 564, 577 (Cal. Ct.
App. 1978) ("The state's obligation and power to protect its citizens by regulation of the
professional conduct of its health practitioners is well settled.  Assuming[,] although we are
loathe to do so[,] an incidental restriction of Dr. Shea's freedom of speech, the First Amendment
is not an umbrella shielding the type of verbal conduct in which the doctor engaged.  It does not
insulate the verbal charlatan from responsibility for his conduct; nor does it impede the State in
the proper exercise of its regulatory functions.") (citations omitted).

practitioner, the State's interest in regulating such speech is manifest.

Similarly, to the extent Plaintiff's speech may have been "unlawful" in a criminal sense it is not entitled to First Amendment protection. The First Amendment does not insulate "speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Giboney v. Empire Storage & Ice, Co.,* 336 U.S. 490, 498 (1949). *See also United States v. Gagliardi*, 506 F.3d 140, 148 (2d Cir. 2007). Alabama law defines the "practice of medicine or osteopathy" as "[t]o diagnose, treat, correct, advise or prescribe for any human disease, ailment, injury, infirmity, deformity, pain or other condition, physical or mental, real or imaginary, by any means or instrumentality." Ala. Code § 34-24-50(1). To practice medicine, the practitioner must be a "doctor" or "physician" licensed by the State Board of Medical Examiners. Ala. Code §§ 34-24-50 through 53; 34-24-70. A chiropractor is guilty of the crime of "Practicing medicine or osteopathy without license," a Class C felony in Alabama, when such chiropractor undertakes activities subsumed within the "practice of medicine" but which are beyond the scope of the chiropractor's license to practice chiropractic. Ala. Code § 34-24-51. While it does not appear that Plaintiff has been charged with a criminal offense by State authorities, to the extent her speech constitutes such unlawful conduct, it is not entitled to the protection afforded by the First Amendment.

Pursuant to these principles, Plaintiff has failed to demonstrate that her speech is protected within the meaning of the First Amendment. While Plaintiff is free to express her views about the efficacy of prescription medications, her expression of such views in the

context of a doctor-patient relationship she conducts pursuant to a license issued by the State subjects such expression to the State's reasonable regulation as the licensing authority. Given that the licensing authority determined that Plaintiff's speech was outside the scope of her license, and hence "unlawful," such speech is not protected by the First Amendment. Without demonstrating that her speech is so protected, Plaintiff can not prevail upon any First Amendment retaliation claim intended to be raised in her Complaint. The State's regulation of Plaintiff's speech, if any, via §§ 34-24-166(b)(3) & (7) is reasonable and necessary given the circumstances in this case and the State's interest in regulating its licensed professions and ensuring the health and safety of its citizens. The Board's imposition of disciplinary penalties on the basis of Plaintiff's speech comports with the First Amendment and Defendants are entitled to summary judgment as to this claim.

## IV.    CONCLUSION

For the reasons specified above, the Magistrate Judge RECOMMENDS that Defendants' Motion to Dismiss (Doc. #10) be GRANTED as to Plaintiff's right-to-counsel claim and Motion for Summary Judgment (Doc. #10) be GRANTED as to Plaintiff's due process and freedom of speech claims and the Complaint be DISMISSED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation by **March 17, 2010**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that

this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 3rd day of March, 2010.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE